UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

DANNY DOMINGUEZ, ELOINAI FERNANDEZ AND ANGEL DIAZ,

    Plaintiff,

    v.

JOSE FIGUEROA SANCHA, et al.

    Defendants.

Civil No. 12-1707 (PG)

**OPINION AND ORDER**

    Danny Dominguez and Elionai Fernandez are licensed bounty hunters who work for Speedy Bailbonds, a bail bond company located in New Jersey. They were required by their employer to locate and bring defendant Ricardo Rodriguez Tirado from Puerto Rico back to New Jersey after he failed to appear at a hearing and fled the jurisdiction.

    After apprehending Rodriguez Tirado with the help of local police officer Angel Diaz, they were unexpectedly arrested and charged with kidnapping, aggravated illegal trespassing and illegal possession and use of a firearm. Meanwhile, Diaz was subject to administrative charges.

    The plaintiffs filed suit under 42 U.S.C. §§1983 and 1988 claiming an elaborate plan to deprive them of their constitutional rights. The ploy allegedly involves the zealous mother of the fleeing convict (Angelica Tirado Velazquez); a prosecutor who exerted undue influence (Minerva Ramos); two police officers who overstepped the proverbial line of their professional duties (Dennis Morales and Carlos Peña) and a slew of supervisors.

    The defendants moved to Dismiss (Docket No. 12). For the reasons stated herein, we **GRANT** in part and **DENY** in part their request.

**I.
Factual and Procedural Background**

    We draw the following facts from the Complaint.

Plaintiffs Danny Dominguez and Elionai Fernandez are licensed bounty hunters employed by Speedy Bailbonds, with offices in New Jersey. See Docket No. 1 at ¶ 26. Speedy Bailbonds posted bail for Ricardo Rodriguez-Tirado after he was charged in a criminal case related to the manufacturing and distribution of narcotics. Id. at ¶¶ 27-28. Pursuant to the agreement between Rodriguez Tirado and Speedy Bailbonds, the parties signed a Bail and Recognizance Agreement stating the terms and conditions of the bail. Id. at ¶ 29.

After Rodriguez-Tirado failed to appear at a hearing and fled the jurisdiction without permission, the Court issued a Warrant and Arrest Order against him. Id. at ¶¶ 30-32. Speedy Bailbonds then made arrangements to locate Rodriguez Tirado and was able to pinpoint his location in San Sebastian, Puerto Rico. Id. at ¶ 35. Dominguez and Fernandez were dispatched to locate him, apprehend him and take him back to New Jersey. Id. at ¶ 34.

On May 4, 2011 Dominguez and Fernandez arrived in Aguadilla and registered their firearms at the Rafael Hernandez Marin Airport. Id. at ¶ 40. Shortly after their arrival, the bounty hunters contacted plaintiff Angel Diaz who was a relative of another employee of Speedy. Id. at ¶ 36. They asked Diaz to guide them to the location where Rodriguez Tirado was supposedly hiding. Id. at ¶¶ 37, 43.

On May 5, 2011 plaintiffs drove by the property where they believed Rodriguez Tirado was hiding. Id. at ¶ 45. They spotted an individual who fit Rodriguez Tirado's description and approached him. Id. at ¶ 46. Much to their dismay, the individual denied that he was Rodriguez Tirado. Id. at ¶¶ 47-49. It wasn't until plaintiffs saw that the man had a tattoo identical to one that Rodriguez Tirado allegedly exhibited that they realized they had found him. Id. at ¶ 50.

Plaintiffs took Rodriguez Tirado into custody and told him that a a Warrant and Arrest Order had been issued against him. Id. at ¶ 52. Since Rodriguez Tirado's mother, Ms. Angelica Tirado, was present during the rendezvous, plaintiffs gave her their contact information in case she had any questions regarding her son's whereabouts. Id. at ¶ 53.

Fernandez and Dominguez took Rodriguez Tirado to a hotel in Aguadilla until it was time to board their flight back to New Jersey later that night. Id. at ¶ 56.

Unbeknownst to plaintiffs, Ms. Tirado had called her son's attorney in Puerto Rico to tell him what had happened. Id. at ¶ 57. The attorney, in turn, contacted his friend Minerva Ramos, who worked as a prosecutor in San Juan. Id. Plaintiffs do not name the attorney as a defendant.

The attorney asked for Ms. Ramos' assistance in helping his client. Id. at ¶ 58. According to the Complaint, Ms. Ramos obliged. Id. She called the police station in San Sebastian and informed the officers that someone would visit the station to file a criminal complaint for kidnapping. Id. at ¶ 59. Ms. Ramos also asked officer Jesus A. Morales to prepare a criminal complaint charging kidnapping and gave him direct instructions to hinder plaintiffs' efforts to take Rodriguez-Tirado back to New Jersey. Id. at ¶ 60.

As expected and arguably following Ms. Ramos's advice, Ms. Tirado filed a criminal complaint against plaintiffs. Id. at ¶ 63. The officer assigned to the investigation, Dennis Morales, was also instructed to do everything in his power to prevent the removal of Rodriguez Tirado from Puerto Rico. Id. at ¶ 64.

It was officer Morales who called Dominguez and Fernandez and asked them to stop by the police station to clarify some matters regarding the arrest of Rodriguez Tirado. Id. at ¶ 65. While at the station, Morales arrested Dominguez and Fernandez and charged them with kidnapping, aggravated illegal trespassing, illegal possession of a firearm and illegal use of a firearm. Id. at ¶¶ 73-74. Dominguez and Fernandez spent the night in prison and were taken before a Judge for a Rule 6 hearing the following day. Id. After the Judge made a finding of probable cause, Dominguez and Fernandez were put under house confinement and ordered to stay in Puerto Rico until conclusion of the proceedings against them. Id. at ¶ 79.

The preliminary hearing took place on June 20, 2011. Id. at ¶ 80. The Court dismissed all pending charges and even questioned why the case had been brought in the first place. Id. Nevertheless, the

Government requested a preliminary hearing on appeal which also resulted in plaintiffs' favor. Id. at ¶¶ 81-83. The Court notified its judgment to all parties on September 27, 2011. Id. at ¶ 83.

Simultaneously, plaintiff Angel Diaz was summoned to the Aguadilla Police Headquarters by Lt. Carlos Peña of the Homicide Division. Id. at ¶ 86. When he arrived, he was greeted by officer Morales who explained that he was investigating a case where Diaz was a suspect. Id. Morales proceeded to talk about Rodriguez Tirado and said that Dominguez and Fernandez had "talked badly about him [Diaz] and that he was 'screwed,'". Id. Mr. Morales continued interrogating Diaz and told him that "he was going to charge him with between 6 to 9 felony charges" unless he provided evidence and testified in another case they were investigating. Id. at ¶ 91.

Lt. Carlos Peña then intervened and told Diaz that if he was willing to testify in a case dating back to 2004, they would provide him immunity in the Rodriguez Tirado case. Id. at ¶ 92. Nevertheless, Diaz denied having any information on the 2004 case. Id. at ¶ 95.

On May 17, 2011 Peña contacted Diaz to tell him that he was going to be charged and to disarm him. Id. at ¶ 96. Even though criminal charges were never brought against Diaz, he was the subject of administrative proceedings. Id. at ¶ 99. As of the date of filing of the Complaint, no final determination had been issued. Id. at ¶ 100.

Plaintiffs brought suit on August 27, 2012. See Docket No. 1. On February 22, 2013 defendants filed the Motion to Dismiss that is now before the Court. See Docket No. 12. Plaintiffs' Opposition was filed on June 28, 2013. See Docket No. 25. Defendants tendered their Reply on August 8, 2013. See Docket No. 28-1. For reasons unknown, on September 18, 2013 defendants filed a nearly identical reply. See Docket No. 38.

## II.
## Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief could be granted. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to

relief.'" Garcia-Catalan v. U.S., 734 F.3d 100, 102 (1st Cir.2013) (quoting Fed.R.Civ.P. 8(a)(2)). When ruling on a motion to dismiss for failure to state a claim, a district court must "ask whether the complaint states a claim to relief that is plausible on its face, accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor." Cooper v. Charter Communications Entertainments I, LLC, 760 F.3d 103, (1st Cir. 2014) (citing Maloy v. Ballori-Lage, 744 F.3d 250, 252 (1st Cir.2014)) (internal quotation marks omitted). Additionally, courts "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir.2013) (citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir.2011)).

"To cross the plausibility threshold [sic], the plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Cooper, 760 F.3d at 106 (citing Maloy, 744 F.3d at 252). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, … , on the assumption that all the allegations in the complaint are true (even if doubtful in fact) … ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted).

"In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir.2011) (citing Twombly, 550 U.S. at 555) (internal quotation marks omitted). That is, the court "need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir.2009) (citing Iqbal, 556 U.S. at 678). "A complaint 'must contain more than a rote recital of the elements of a cause of action,' but

need not include 'detailed factual allegations.'" Rodriguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico, 743 F.3d 278, 283 (1st Cir.2014) (citing Rodríguez–Reyes v. Molina–Rodríguez, 711 F.3d 49, 53 (1st Cir.2013)). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal, 556 U.S. at 681).

"Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 664-664. Nevertheless, when evaluating the plausibility of a legal claim, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits; a well-pleaded complaint may proceed even if … a recovery is very remote and unlikely." Ocasio-Hernandez, 640 F.3d at 12-13 (citing Twombly, 550 U.S. at 556). As a result, courts should read the complaint "as a whole" and be cautious not to apply the plausibility standard "too mechanically." See Rodriguez-Vives, 743 F.3d at 283 (citing Garcia–Catalan, 734 F.3d at 101, 103).

**III.**
**Discussion**

**A. Plaintiffs' claims are time-barred**

Defendants argue that all of plaintiffs' causes of action are barred by the applicable statute of limitations. Although section 1983 provides a federal cause of action, the length of the limitations period is drawn from state law. Wallace v. Kato, 549 U.S. 384, 387 (2007). The parties do not dispute that the statute of limitations period of one year for tort actions under Puerto Rico law applies to a section 1983 suit. Centro Medico del Turabo v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005); see also 31 P.R. Laws Ann. § 5298(2). Unlike the limitation period itself, the accrual date of a section 1983 claim is a matter of federal law. Wallace, 549 U.S. at 388.

Defendants state that the statute of limitation for a section 1983 claim based on false arrest begins to run at the time that the claimant becomes detained pursuant to legal process. Because plaintiffs Dominguez and Fernandez were allegedly unlawfully arrested

on May 5, 2011, the one-year statutory limit to file their claim would have lapsed by the time that they filed the present action.

Plaintiffs respond that defendants mischaracterize their claim as one for false arrest when the facts clearly indicate that malicious prosecution is the source of their legal conundrum. Furthermore, they state, because malicious prosecution does not accrue until the termination of the criminal proceedings against the claimants, their action is not time-barred.

To determine whether the action is timely, we must then distinguish between both causes of action and their respective accrual dates. Furthermore, we will separate the discussion of the claims brought forth by Danny Dominguez and Eloinai Fernandez from those of plaintiff Angel Diaz because of the distinct factual scenarios akin to each.

**Plaintiffs Dominguez and Fernandez' claims**

To distinguish between a false imprisonment and a malicious prosecution cause of action, we find guidance in First Circuit jurisprudence. In Harrington v. Nashua, 610 F.3d 24 (1st Cir. 2010) the Court engaged in a very similar analysis to the one we embark upon. In distinguishing the two cases of action, the Court states: "[w]hen a plaintiff's claim arises out of 'detention without legal process,' the tort of false imprisonment provides the appropriate analogy from which to ascertain the accrual date of a cause of action under section 1983."[1] Harrington, 610 F.3d at 29. However, "when the period of false imprisonment ends, any unlawful detention thereafter 'forms part of the damages for the entirely distinct tort of malicious prosecution.'" Id.

Malicious prosecution, then, "remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." Id. To succeed in a claim for malicious prosecution, a

---

[1] "Under Puerto Rico law, false arrest and false imprisonment claims share identical elements and focus on whether the arresting officers 'lacked reasonable cause for believing that [the suspect] committed a felony.'" Abreu-Guzman v. Ford, 241 F.3d 69, 75 (1st Cir. 2001)(citing Harrington v. United States, 748 F.Supp. 919, 933 (D.P.R. 1990) (internal quotation marks omitted)).

plaintiff must show "that defendants acted with malice and without probable cause, defined as 'a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true.'" Abreu-Guzman, 241 F.3d at 69 (1st Cir. 2001) (citing Lora-Rivera v. Drug Enforcement Admin. Dep't of Justice, 800 F.Supp. 1049, 1051–52 (D.P.R. 1992)). To establish the elements of such a claim, a plaintiff must prove that: "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir. 2013) (citing Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir.2012)).

There is, however, a third cause of action that may encompass both false arrest and malicious prosecution allegations. Such is the "unusual case" in which a conspiracy to maliciously prosecute begins "before the victim's arrest and encompassed it." Nieves v. McSweeney, 241 F.3d 46, 52 (1st Cir. 2001)(making reference to Robinson v. Maruffi, 895 F.2d 649 (10th Cir. 1990)). The allegation of a conspiracy that encompasses the fabrication of evidence, false arrest and the ensuing malicious prosecution is a viable claim under § 1983. Robinson, 895 F.2d at 654 (citing Anthony v. Baker, 767 F.2d 657, 662 (10th Cir. 1985)); Taylor v. Gilmartin, 686 F.2d 1346, 1355 (10th Cir. 1982) and Slavin v. Curry, 574 F.2d 1256, 1261 (5th Cir. 1978)).

A civil rights conspiracy under Section 1983 is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir.2008) (citing Earle v. Benoit, 850 F.2d 836, 844 (1st Cir.1988)). "In order to make out an actionable conspiracy under section 1983, a plaintiff has to prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right." Nieves, 241 F.3d at 53 (citations omitted).

It is against this legal backdrop that we analyze the complaint. Drawing all reasonable inferences in the plaintiffs' favor, the Court

will infer from plaintiffs' allegations in the Complaint that they are raising a malicious prosecution, a false imprisonment and a conspiracy to maliciously prosecute claim against defendants. Plaintiffs' allegations tell the story of a conspiracy to maliciously prosecute Dominguez, Fernandez and Diaz to thwart their attempts to remove Rodriguez Tirado from his hideaway in Puerto Rico.

According to plaintiffs, defendant Angelica Tirado contacted her son's attorney and he, in turn, procured the help of his prosecutor friend, Minerva Ramos. See Docket No. 1 at ¶ 57. It was Ms. Ramos who allegedly "initiated a series of events with the purpose of impeding that Defendant Ricardo Rodriguez be delivered to answer the Court in New Jersey…" Id. at ¶ 58. Even before Ms. Angelica Tirado filed a criminal complaint for kidnapping against Dominguez and Fernandez, Ms. Ramos called the police station located in the town of San Sebastian and dispensed instructions regarding their eventual arrest and charging. Id. at ¶¶ 60-62. Thus, just as in Robinson, the plaintiffs allege that the conspiratorial agreement to deprive them of their liberty without due process of law arose before the arrest and that the arrest was, in fact, a step in furtherance of that ploy.

Taking their allegations at face value, the plaintiffs configured their claims of false imprisonment and malicious prosecution as arising within the semblance of an ongoing conspiracy. Robinson tells us that in instances like this, the cause of action accrues on the day that the proceedings terminate in plaintiff's favor. Robinson, 895 F.2d at 654-655; see also Barrios-Villahermosa v. Puerto Rico, No. 09-1524, 2010 WL 1779749, at *4 (D.P.R. May 3, 2010) (citing Nieves, 241 F. 3d at 51)) ("The black-letter rule is that the statute of limitations on a malicious prosecution claim begins to run upon the termination of the antecedent criminal proceedings.") Like in Robinson, the alleged conspiracy here cannot be perceived as a series of separate claims, but as one conspiracy to maliciously prosecute. Thus, the proper accrual date is the date in which the criminal proceedings against Dominguez and Fernandez drew to a close.

Here, the final dismissal of the case against Dominguez and Fernandez came on September 27, 2011. See Docket No. 1 at ¶ 83.

Exactly one month before the one-year anniversary of the dismissal, plaintiffs filed the instant Complaint. Because their allegations point to the existence of a single ongoing conspiracy that encompassed the false arrest and the ensuing malicious prosecution, all of plaintiffs' claims are timely.

**Plaintiff Angel Diaz**

Plaintiff Diaz' case, however, poses a different set of facts and timeline. As mentioned previously, a cause of action for malicious prosecution requires a seizure pursuant to legal process. See Hernandez-Cuevas, 723 F.3d at 101. The Complaint avers that Mr. Diaz was not charged but that an administrative proceedings were commenced against him. See Docket No. 1 at ¶ 99. This Court need not discuss whether a maliciously prosecuted administrative proceeding constitutes a "legal process" for purposes of a malicious prosecution claim because Mr. Diaz' claims fail for other reasons.

According to the Complaint, the administrative action against Mr. Diaz has not concluded. Id. ¶ 100. "Without such a requirement, 'parallel litigation over the issues of probable cause and guilt' would arise and inconsistent adjudications could result 'in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" Olsen v. Correiro, 189 F.3d 52, 68 (1st Cir. 1999)(citing Heck v. Humphrey, 512 U.S. 477 (1994) (internal quotations omitted)).

Since a malicious prosecution action also requires that the prosecution ends favorably to the plaintiff, Mr. Diaz's claim is premature at this point.

**B. Eleventh Amendment immunity bars claims against defendants in their official capacity**

Defendants raise an Eleventh Amendment immunity defense against any claims instituted against them in their official capacities. Plaintiffs seem to concede that the complaint "may be dismissed against them (defendants) in their official capacities, but not so in their personal capacities." See Docket No. 25 at page 21. The

Case 3:12-cv-01707-PG   Document 40   Filed 09/30/14   Page 11 of 18
Civil No. 12-1707 (PG)                                           Page 11

question, then, is whether defendants are entitled to qualified immunity for the claims against them in their individual capacity.

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2085 (2011). A qualified immunity analysis consists of two prongs: (1) whether the facts as alleged by plaintiff establish a violation of a constitutional right, and (2) whether that right was clearly established given the state of the law at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The qualified immunity inquiry is "a pure question of law." Elder v. Holloway, 510 U.S. 510, 514 (1994).

As to the first prong, the court considers whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the [defendants'] conduct violated a constitutional right." Saucier, 533 U.S. at 201. As to the second prong, whether the law was clearly established, such inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. If the public official can demonstrate he did not know, nor should he have known the relevant legal standard, then qualified immunity applies. Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982).

The Complaint raises claims against several government officials; a prosecutor; two police officers; a convict who was being taken into custody and his mother. The last two are not subject to a qualified immunity defense because they are not "government officials." See Ashcroft, 131 S.Ct. at 2085.

As to the other defendants, we find that further factual development is needed to reach a qualified immunity determination. Because the analysis of qualified immunity requires the Court to make a determination involving whether defendants acted objectively in a reasonable manner "qualified immunity is usually raised by a motion for summary judgment after a limited amount of discovery has been conducted…" Whisman through Whisman v. Rinehart, 119 F.3d 1303, 1309

(8th Cir. 1997); see also Landron & Vera, LLP v. Somoza-Colombani, No. 12-1858, 2013 WL 2422807, at *9 (D.P.R. June 3, 2013).

In Peña-Peña v. Figueroa-Sancha, 866 F.Supp.2d 81, 94 (D.P.R. 2012), this District reaffirmed the principle. In denying a qualified immunity defense raised in a motion to dismiss, the court expressed: "[a]t this stage of the proceedings, however, the Court is unable to make the factual determinations that must underpin any ruling on qualified immunity."

Thus, defendants may raise their qualified immunity defense at a later stage of the proceedings.

### C. Failure to State a Cause of Action under 42 U.S.C. § 1983

In the Motion to Dismiss, defendants concede that the allegations of the complaint "fall squarely within the provisions of the Fourth Amendment" and thus "it is according to the standards established for the same that the instant case should be evaluated and not under the Fourteenth Amendment." See Docket No. 12 at page 15.

However, it seems defendants had a change of heart because, in their Reply, they revisit the argument and ask the Court to declare that none of plaintiffs' claims survive 12(b)(6) scrutiny. See Docket No. 38 at page 3.

**Fourth Amendment Claims**

In their Reply, Defendants are adamant that the First Circuit does not recognize a § 1983 claim based on malicious prosecution or that it is "an open question" at best. See Docket No. 38 at pages 5-6. To this end, they cite a line of opinions but overlook a key decision on the matter, Hernandez Cuevas v. Taylor. A little more than a year ago and certainly motivated by what it called "an embarrassing diversity of judicial opinion,"[2] the First Circuit recognized the existence of a Fourth Amendment malicious prosecution suit under § 1983 in certain circumstances. Hernandez, 723 F.3d at 94 ("[We] conclude that an individual's Fourth Amendment right to be free from seizure but upon probable cause continues through the pretrial period, and that, in

---

[2] See Hernandez-Cuevas, 723 F.3d 91 at 98.

certain circumstances, injured parties can vindicate that right through a § 1983 or *Bivens* action.")

The Court further established that "in most cases" a magistrate's determination of probable cause for arrest "is an intervening act that could disrupt any argument that the defendant officer had caused the continued unlawful seizure." Hernandez-Cuevas, 723 F.3d at 100 (quoting Sanchez v. Pereira-Castillo, 590 F.3d 31, 50 (1st Cir. 2009)). However, if a plaintiffs is able to show that defendants "were responsible for his continued, unreasonable pretrial detention, the plaintiff has stated a constitutional injury that may be vindicated through a § 1983 action." Id.

Though the Court adopted a "purely constitutional approach" to analyze the elements of a malicious prosecution claim, it is no less true that it recognized that the practical consequences of their choice were "less significant than they initially appear." Hernandez-Cuevas, 723 F.3d at 101. In fact, a plaintiff seeking to establish a Fourth Amendment violation in the context of malicious prosecution must show that, even though a magistrate found the evidence sufficient to establish probable cause "the evidence was, in fact, constitutionally unacceptable because the officers formulated evidence essential to the probable cause determination with a mental state similar to common law malice." Id.

With the echo of those expressions to lead us, our inquiry turns to whether the facts alleged in the complaint state a plausible claim against the defendants. In Hernandez-Cuevas, the Court warned against reviewing the complaint in "a piecemeal fashion," Hernandez-Cuevas, 723 F.3d at 103. Instead, it followed First Circuit precedent that advocates an integral review of the complaint. Id. (citing Ocasio-Hernandez v. Fortuño-Buset, 640 F.3d 1 (1st Cir. 2011)).

Looking at the complaint in that fashion, we believe that plaintiffs have pleaded sufficient facts which, if true, would be enough to establish that defendants Minerva Ramos, Dennis Morales, Jose Figueroa Sancha, Emilio Diaz Colon and Guillermo Somoza Colombani violated their Fourth Amendment rights. Because Rodriguez Tirado and Angelica Tirado are not state actors, their roles in the alleged

conspiracy would fall under the spectrum of Article 1802 of the Puerto Rico Civil Code and thus are not included in this portion of the analysis.

By the same token, unlike the other co-defendants, Carlos Peña is solely tied to the claims of malicious prosecution presented by Angel Diaz. Because, as described here, *infra*, Mr. Diaz has no plead enough facts to sustain his malicious prosecution claims, the claims against Mr. Peña are dismissed.

The cumulative facts[3] alleged in the complaint allow this Court to infer that defendants caused Dominguez and Fernandez to be on house confinement following their initial appearance before the magistrate. Taking the allegations as true, plaintiffs' averments establish that defendants caused a seizure of the plaintiffs pursuant to legal process unsupported by probable cause. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Fournier v. Reardon, 160 F.3d 754 (1st Cir. 1998) (quoting U.S. v. Mendenhall, 446 U.S. 544, 554 (1980)). "Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships…Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty." Gerstein v. Pugh, 420 U.S. 103, 114 (1975)(internal citing references omitted).

According to the Complaint, the proceedings terminated in plaintiffs' favor. The analysis is thus centered on whether the law enforcement officers and their supervisors were responsible for plaintiffs "continued, unreasonable pretrial detention." Hernandez-Cuevas, 723 F.3d at 100. To hold officers accountable in this context, they must have "(1) 'lied to or mislead prosecutors'; (2) 'failed to disclose exculpatory evidence'; or (3) 'unduly pressured the prosecutor to seek the indictment.'" Id. (citations omitted).

---

[3] "[T]he Supreme Court has suggested that allegations that would individually lack the heft to make a claim plausible may suffice to state a claim in the context of the complaint's other factual allegations." Hernandez-Cuevas, 723 F.3d at 103 (citing Twombly, 550 U.S. at 557).

In this case, plaintiffs aver that Ramos actively participated in their arrest and in the fabrication of evidence against them. Specifically, Ramos instructed an officer to prepare a criminal complaint against Dominguez and Fernandez charging kidnapping even though she was aware that there was an outstanding warrant for Rodriguez Tirado's arrest. See Docket No. 1 at ¶¶ 60-62. Moreover, Ramos instructed the officers to prevent Rodriguez Tirado's removal from Puerto Rico. Id.

Likewise, officer Morales played a key role in the alleged conspiracy. Even though plaintiffs provided him with all the documentation to verify their identities and the basis for their involvement with Rodriguez Tirado, Morales arrested them. See Docket No. 1 at ¶¶ 67-69. He also made sure that they were charged with illegal possession of firearms despite the fact that Dominguez and Fernandez gave him their valid licenses to carry weapons and explained that they had registered them upon arrival. Id. at ¶¶ 70-72.

Plaintiffs also suggest that someone in a position of power was giving instructions "from San Juan" to prosecute them. ("Defendant Morales…said that he had received instructions directly from San Juan to detain and charge them. Docket no. 1 at ¶ 69). See also, Docket No. 1 at ¶ 82 ("Plaintiff's Defense Attorney directly asked the Prosecutor assigned to the case, Belinda Brignoni Hernandez, why insist in this case and she simply said that it was not 'her call' and that instructions regarding the case were coming straight from San Juan.").

Based on the aggregate effect of the allegations in the Complaint, we find that plaintiffs met their pleading burden for a § 1983 malicious prosecution cause of action under the Fourth Amendment.

**Fourteenth Amendment Claims**

Furthermore, the Motion to Dismiss posits that plaintiffs failed to state a cognizable claim under § 1983 for violations of the Fourteenth Amendment. See Docket No. 12 at page 13.

The Due Process Clause protects against deprivation of life, liberty, or property without the due process of law. U.S. Const. amend. XIV. "That due process right has both a procedural and a substantive component … ." Parker v. Hurley, 514 F.3d 87, 101 n. 14

(1st Cir.2008). Notwithstanding, in the context of a plaintiff's Section 1983 malicious prosecution claim, the First Circuit Court of Appeals has held that it "is not properly based on either a procedural or substantive due process violation." Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st Cir.1999).

"A § 1983 claim for malicious prosecution as a deprivation of procedural due process is barred where, as here, the state's tort law recognizes a malicious prosecution cause of action." Id. (quoting Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 256 (1st Cir.1996); Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42-43 (1st Cir.1994)). See also Montalvo Febus v. Sanchez, No. 11-1428(GAG), 2013 WL 6628299, at *5 (D.P.R. December 16, 2013) ([T]he availability of an adequate remedy for malicious prosecution under Commonwealth law, see P.R. Laws Ann. tit. 31, § 5141 (1991), is fatal to Plaintiff's procedural due process claim.")

What is more, the Supreme Court's opinion in Albright v. Oliver, 510 U.S. 266 (1994), firmly closed the door on substantive due process as a vehicle for bringing claims of malicious prosecution. See Hernandez-Cuevas, 723 F.3d at 98; Roche, 81 F.3d at 256 ("There is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution.") Without an actionable malicious prosecution, a conspiracy to maliciously prosecute claim under § 1983 inevitably fails. Aleman v. City of Bakersfield, No. 1:11-CV-2006 AWI JLT, 2013 WL 3936740, at *13 (E.D.Cal. July 30, 2013)(internal references omitted).

The court harbors no doubt that plaintiffs' malicious prosecution claim falls within the purview of the Fourth, not the Fourteenth Amendment. Therefore, the court grants defendants' request that plaintiffs' Fourteenth Amendment claims be dismissed.

**D. Supplement jurisdiction claims should also be dismissed**

The supplemental claims are also challenged on the Motion to Dismiss. Defendants posit that "no federal foundational claim exists" (Docket no. 12 at page 15) and thus any supplemental claim should be dismissed. We will not oblige. As discussed here, *infra*, most of

plaintiffs' claims withstand Rule 12(b)(6)scrutiny and thus, there is a basis for federal and thus supplemental jurisdiction.

In the alternative, defendants asks us to determine that plaintiffs have not met the required elements for a malicious prosecution claim under Puerto Rico law.

"In order for an action for damages grounded on the promotion of a criminal prosecution by defendant against plaintiff to prosper, it is necessary that it be proved that (a) defendant instituted said action maliciously, (b) without probable cause, (c) that the action ended favorably to the plaintiff, and (d) that the latter sustained damages." Raldiris v. Levitt & Sons, 3 P.R. Offic. Trans. 1087 (1975) (quoting Parés v. Ruiz, 19 P.R.R. 323, 327 (1913)); see also Gimenez v. Silen, 131 D.P.R. 91 (1992).

According to plaintiffs, Angelica Tirado filed a criminal complaint against Dominguez and Fernandez for kidnapping. See Docket No. 1 at ¶ 63. They aver that the complaint was instituted without probable cause and that it ended with the dismissal of the charges against them. In addition, plaintiffs claim to have suffered damages as a result of the criminal procedures against them. See Docket No. 1 at ¶¶ 77-79 and 107.

Even though the "mere fact of reporting the commission of an offense to the authorities is not sufficient to impose liability," Raldiris, 3 P.R. Offic. Trans at 1087, it's no less true that "capricious information filed in bad faith and without reasonable grounds would serve as ground for an action of malicious prosecution." Id. Plaintiffs accuse Ms. Tirado of filing a criminal complaint against them in bad faith. At this stage in the proceedings, the plaintiffs have plead enough to survive dismissal.

### IV.
### Conclusion

In light of the above, the Court GRANTS in part and DENIES in part defendants' Motion to Dismiss.

**IT SO ORDERED.**

In San Juan, Puerto Rico, September 30, 2014.

                                    **S/ JUAN M. PÉREZ-GIMÉNEZ**
                                    **JUAN M. PÉREZ-GIMÉNEZ**
                                    **UNITED STATES DISTRICT JUDGE**